954 So.2d 649 (2007)
Nora O'CONNOR, Appellant,
v.
HILLSBOROUGH COUNTY SECURITY SVCS./CAMBRIDGE INTEGRATED SERVICES GRP EMPLOYER, Appellees.
No. 1D06-2356.
District Court of Appeal of Florida, First District.
March 30, 2007.
*650 Jodi A. Zakaria and Alfred L. Deutschman of Deutschman & Zakaria, Inverness, for Appellant.
Ann L. Robbins, Esquire, Tampa, for Appellees.
BENTON, J.
In this workers' compensation case, Nora O'Connor's entitlement to permanent total disability benefits is undisputed. Nor does she question her former employer's right to take a social security offset beginning on August 24, 2005, the day the former employer, Hillsborough County Security Services, and its servicing agent, Cambridge Integrated Services GRP Employer, filed a Notice of Action/Change (a DWC-4 form) with the Division of Workers' Compensation asserting the right to an offset. But she does appeal the order of the judge of compensation claims insofar as it authorizes recoupment of "overpayments" from August 31, 1997, until August 13, 2005. We reverse this part of the order.
The burden was on the employer (and the employer's servicing agent) to prove the right to recover overpayments they claimed as an offset. See Hardrives of Delray, Inc. v. O'Neal, 752 So.2d 693, 694 (Fla. 1st DCA 2000) ("[W]hen a social security offset has been challenged by a claimant, one may not be taken until and unless the employer and carrier prove that it is warranted."); Santos v. K-Mart, 629 So.2d 1071, 1072 (Fla. 1st DCA 1994) ("The employer carries the burden, if raised by a claimant as an issue for hearing, to prove that a social security offset was appropriately taken."). The claimant raised the issue in the present case, as to offsets for any period before August 24, 2005.
"At one time, the cases held that an unexplained overpayment of workers' compensation benefits should be presumed to have been an irrevocable gift to the employee who received the overpayment." Brown v. L.P. Sanitation, 689 So.2d 332, 333 (Fla. 1st DCA 1997). See also Belam Fla. Corp. v. Dardy, 397 So.2d 756, 758 (Fla. 1st DCA 1981) (holding "any overpayment of compensation is a gratuity in the absence of a finding that a reasonable basis exists for the overpayment") (emphasis omitted). "While section 440.15(13) has reversed the statutory presumption that an overpayment is a gratuity, it has not altered the mechanism specified in section 440.15(10) for perfecting entitlement to a social security disability offset." Monroe v. Publix # 148, 790 So.2d 1249, 1252 (Fla. 1st DCA 2001).
When Ms. O'Connor began receiving permanent total disability benefits on August 22, 1997, on account of a compensable *651 injury that occurred on September 20, 1993, she was also receiving social security disability benefits. Asked to execute a Request for Social Security Disability Benefit Information (a DWC-14 form), she did so promptly on March 25, 1998, authorizing the Social Security Administration to release any information it had to her former employer and its servicing agent. See § 440.15(10)(c), Fla. Stat. (1998) ("The employee shall, upon demand by . . . the employer, or the carrier, authorize the Social Security Administration to release disability information relating to her. . . ."); Fla. Admin. Code R. 4L-3.021(1) (1998). The parties stipulated to her full cooperation, and that she never refused to sign a DWC-14 form.
On a form dated July 22, 1998, the Social Security Administration indicated it was taking an offset against social security benefits in the amount of $450.80, and that it had not "calculated" the date on which it would stop taking the offset. Whether any such offset was in fact being taken at that time (or could lawfully have been taken) we need not decide. But the Social Security Administration eventually advised the employer or its servicing agent that it had stopped taking offsets on August 31, 1997, advice both parties seem to take as fact.
When the employer and servicing agent first asserted an offset against appellant's workers' compensation benefits on August 24, 2005, the Notice of Action/Change announced their intention to take not only an offset going forward, but also an additional deduction to recoup past overpayments: twenty percent of each biweekly permanent total disability benefits check until the putative overpayment was recovered in full. See § 440.15(12), Fla. Stat. (2005). When Ms. O'Connor disputed any right to recoupment, the parties entered into a stipulation and waived an evidentiary hearing, agreeing to submit the matter to the judge of compensation claims on legal memoranda and stipulated exhibits.
In her memorandum, Ms. O'Connor argued she had complied with all requests to furnish DWC-14 forms relating to her social security benefits, and that, pursuant to Monroe, the employer had no right to recover any offset for social security benefits against compensation payments it owed for any time before the employer perfected its right to an offset by filing a Notice of Action/Change. See 790 So.2d at 1251 ("Filing a notice of action/change and subtracting the offset from compensation payments suffices to perfect an employer's right to a social security disability offset. No order of a judge of compensation claims is required."). See generally Fla. Admin. Code R. 4L-3.0091(1) (1998). She argued that the employer and its servicing agent knew or should have known of the right to take an offset as early as March of 1998, but delayed filing a Notice of Action/Change for seven years because they failed to exercise due diligence.
The employer and its servicing agent argued that, when they contacted the Social Security Administration in 1998 to determine whether they could take an offset, they were incorrectly advised that the Social Security Administration was taking an offset itself, and believed they were not entitled to take an offset for that reason. Their memorandum argued:
Efforts were then made by the adjusters for the E/SA to get the SS Administration to cease taking an offset so that the E/SA could apply the offset. Phone calls to the SS Administration were made, the servicing agent contacted Health Advocates, Inc. for assistance in getting the SS Administration to cease the offset, releases from the Claimant were requested in order to obtain SS updates, etc. After regularly writing and phone calling, by 7-28-05, the E/SA *652 was able to speak to a SS Administration supervisor, Mr. Rogers, who confirmed that the SS Administration had ceased taking an offset and, in fact, it had ceased on 8-31-97. Clearly, incorrect information had been provided to the E/SA by the Administration, in writing, and by phone, and the E/SA had relied on that incorrect information in calculating the Claimant's PT benefits.
But this argument, among other things, went well beyond the stipulated evidence, which consisted solely of a petition for benefits filed on September 7, 2005; a June 15, 1998, letter to Patsy Iampieri; the Pretrial Stipulations, Pretrial Compliance Questionnaire, and Order; the Notice of Action/Change dated August 24, 2005; and the request for social security disability benefit information (form DWC-14) dated July 22, 1998.
Framing the question as whether the employer or its servicing agent "unreasonably delayed in commencing application of the offset," the judge of compensation claims concluded  with no stated rationale  that the initial three-month delay after Ms. O'Connor supplied the servicing agent with the DWC-14 form before it was filed with the Social Security Administration was not unreasonable, and said further:
Claimant does not contend that Employer/Servicing Agent did not make repeated attempts to ascertain the status of the SSA offset. Instead, Claimant argues that no timely effort was made to begin taking the offset when it became clear that an offset was warranted. The undersigned disagrees. . . . . The record reflects that it was not until August 13, 2005 that SSA confirmed that it ha[d] ceased taking its offset effective August 31, 1997. Claimant was paid full PTD benefits in addition to 5% supplemental benefits from August 22, 1997 through August 13, 2005. . . .
But the employer and servicing agent did not present evidence of contact with the Social Security Administration before the telephone call in August of 2005, except for a single occasion in 1998. They presented no evidence that the information they got then was, in fact, false; and they did not explain why they failed to ask Ms. O'Connor or her counsel what social security benefits she was receiving.
Nothing in the evidence suggests that Ms. O'Connor and her counsel were anything other than completely forthcoming about her social security disability benefits, and not just in complying with every request to fill out a DWC-14 form: She disclosed by letter from counsel dated June 15, 1998, that she was receiving $192 in social security disability benefits, but that they were "trying to ascertain whether . . . she is entitled to more" social security disability benefits. The letter closed: "If you need any further information about the social security disability amount, please feel free to call. . . . I look forward to hearing from you."
In Monroe, which was decided after Hardrives of Delray, Inc., we stated unequivocally that it was necessary to (file the prerequisite Notice of Action/Change and) actually take the offset in order to perfect entitlement:
[A] recipient of permanent total disability benefits is entitled to full benefits, the concurrent receipt of social security disability benefits notwithstanding, until the employer or carrier takes a social security disability offset, at least where the recipient has complied with a request to execute a Request for Social Security Disability Benefits Information (LES Form DWC-14) and furnished the completed form to the (former) employer or its *653 workers' compensation insurance carrier in timely fashion.
790 So.2d at 1253. The claimant in this case timely completed DWC-14 forms, but entitlement to the offset was not perfected until the Notice of Action/Change was filed on August 24, 2005.
We decided in Upson v. Orange County School Board, 811 So.2d 733, 736 (Fla. 1st DCA 2002), that "any past `overpayments' have not given the E/SA a right to repayment because the claimant was entitled to his full benefits until the E/SA took an offset." Accord Monroe, 790 So.2d at 1253. Here the employer and servicing agent argue nevertheless that their seven-year delay in perfecting entitlement to an offset should be excused, on account of misinformation they say they received  not from the claimant, but from the Social Security Administration  at the very beginning of the seven-year period. They cite Hardrives of Delray, Inc., for the proposition that an employer is entitled to recoup overpayments for an offset where the failure to take the offset was traced to an "innocent mistake" based on information provided by the Social Security Administration. See 752 So.2d at 694. But the employer did take an offset in Hardrives, after perfecting the right to do so, and did not seek to recover a single penny from the claimant. See id. Hardrives does not support appellant's position.
Crucial findings on which the judge of compensation claims relied below are based, not on evidence, but on allegations in the legal memorandum appellees filed. Arguments made in a legal memorandum are not evidence. See, e.g., Sanchez v. Woerner Mgmt., Inc., 867 So.2d 1173, 1175 (Fla. 1st DCA 2004) ("[T]he unsworn memorandum had no evidentiary value, and therefore should not have been admitted as an exhibit. It is in the nature of a pleading and not an evidentiary document."). The judge of compensation claims erred in relying on allegations in the legal memorandum which had no support in the record. Findings of fact must be supported by competent, substantial evidence. See, e.g., Swanigan v. Dobbs House, 442 So.2d 1026, 1027 (Fla. 1st DCA 1983).
The order is reversed insofar as it allows recoupment, and the case is remanded for further proceedings.
BARFIELD and POLSTON, JJ., concur.